IN THE UNITED STATES DISTRIC COURT
FOR THE EASTERN SOUTHERN DIVISION
DISTRICT OF MICHIGAN

CAROLE MELCHER,

      PLAINTIFF,                           CASE NO.:

vs.                                        HON.

AMAZON,

      DEFENDANT.

DAIMEON M. COTTON (P75563)
COTTON LAW CENTER, PLLC
Attorney for Plaintiff
13900 Woodward Avenue
Highland Park, Michigan
(313) 963-1320
(313) 963-1325 Fax
dcotton@cottonlawcenter.com

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Carole Melcher, by her attorneys, Cotton Law Center, PLLC, for causes of actions arising out of her employment, under federal and state laws prohibiting discrimination and retaliation against employees, states the following for her Complaint and Jury Trial Demand.

## JURISDICTION AND VENUE

1.     Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343 and 1345.  This action is authorized and instituted pursuant to the

Americans with Disabilities Act of 1990 42 U.S.C. §§ 12101 *et. seq.,* ("ADA"), the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. ("PDCRA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Michigan Elliot-Larsen Civil Rights Act of 1976, MCL 37.2101 et. seq., ("ELCRA"), and the Michigan Worker's Disability Compensation Act of 1969, MCL 418.101 et seq. ("WDCA"), and the amount in controversy exceeds the jurisdictional requirement of $75,000.00. Therefore, this court has jurisdiction, and this court is the proper venue for the complaint.

2.      The employment practices alleged below were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan Southern Division.

## THE PARTIES

3.      Carole Melcher ("Plaintiff") is an individual who at all relevant times resided and worked in the State of Michigan.

4.      Amazon ("Defendant") is a Delaware corporation that has been continuously doing business in the Eastern District of Michigan and is subject to the jurisdiction of this court.

## GENERAL ALLEGATIONS

5.      Plaintiff began her employment with Defendant on or about May 10, 2019. Plaintiff's position is Ambassador Team Lead.

2

6.     Plaintiff was 57 years old at the time she began working for Defendant.

7.     Throughout the course of her employment with Defendant, Plaintiff performed her job duties in a manner that was satisfactory or better.

8.     On January 21, 2020, Plaintiff tripped on a rope while working and fell face first suffering severe and disabling injuries.

9.     On January 21, 2020, Plaintiff immediately informed Defendant about the fall, and Plaintiff requested medical treatment and coverage for her work injury.

10.     Plaintiff's coworker witnessed Plaintiff's fall and assisted Plaintiff in cleaning up blood.

11.     Defendant did not ask Plaintiff for incident report until 5-6 days after the fall occurred, on or about January 26, 2020.

12.     Defendant asked Plaintiff to backdate her incident report.

13.     Plaintiff's condition began to worsen; her eyes turned black and were swollen, and her headaches and dizziness increased.

14.      On January 30, 2020, Plaintiff went to urgent care.

15.     On January 30, 2020, Plaintiff was released back to work on work restrictions.

16.     Defendant refused to follow Plaintiff's work restrictions and increased her workload.

17.     On February 23, 2020, Plaintiff went to the emergency room because her dizziness, vision loss, headaches, and other symptoms were getting severe.

18.     Plaintiff's symptoms were aggravated by the increased work.

19.     Despite the increased work, Defendant placed Plaintiff in another position and reduced her hours down to 4 per week, resulting in Plaintiff earning a lower wage.

20.     Plaintiff opposed (1) Defendant's refusal to honor her work restrictions, (2) Plaintiff's increased work, and (3) reduced hours as unlawful retaliation for Plaintiff's disability caused by her work injury, and Plaintiff's reporting her work injury that caused her injury and disability.

21.     On or about March 4, 2020, Defendant contacted Plaintiff and told her she was not on the schedule as she was not needed at work, despite Plaintiff's release to return to work with restrictions.

22.     Despite taking Plaintiff off of the schedule, Defendant still issued Plaintiff an occurrence reprimand for not coming into work.

23.     In or around April 2020, Plaintiff received an email from Defendant stating that if she was not placed back on the schedule within the following week, her employment would be terminated.

24. In or around April 2020, Plaintiff presented Defendant with her doctor's note regarding her condition and the work restrictions that had been placed, which allowed Plaintiff to still work.

25. Defendant instructed Plaintiff to disregard the doctor's return-to-work notice.

26. Plaintiff was fearful of Defendant's retaliation because Plaintiff (1) Defendant refused to honor her work restrictions, (2) Defendant increased her workload, (3) Defendant reduced hours she worked and was not adhering to her work instructions, (4) Defendant disciplined Plaintiff with the write up after Defendant removed Plaintiff from the schedule then wrote her up for not coming to work that day, and (5) Plaintiff complained to Defendant about Defendant's unlawful retaliation due to Plaintiff's disability and work injury.

27. On May 30, 2020, Plaintiff informed Defendant of her upcoming doctor's appointment scheduled for July 9, 2020.

28. Defendant informed Plaintiff Defendant would not need a doctor's note following her July 9, 2020 appointment.

29. On or about June 1, 2020, Plaintiff filed a Charge of Discrimination for discrimination and retaliation on the basis of disability and age.

30.     On or about June 8, 2020, Plaintiff received an email from Defendant stating that if she did not return to work by June 14, 2020, her employment would be terminated.

31.     On or about June 8, 2020, Plaintiff responded to Defendant's email with a detailed account of her situation, including Defendant's prior instructions regarding her return to work, and Defendant told her to disregard her return-to-work date of June 11, 2020.

32.     On October 8, 2020, despite Defendant assuring Plaintiff that her doctor's note was not needed, Defendant terminated Plaintiff's employment based on attendance.

33.     Plaintiff's July 9, 2020, doctor's note restricted her from working until October 24, 2020.

34.     Defendant treated Plaintiff differently with respect to the terms and conditions of employment than her similarly situated coworkers, who were younger, did not have a disability or the same genetic information as Plaintiff, and who did not have a disability or work-related injury like Plaintiff.

35.     Defendant replaced Plaintiff with a younger employee.

36.     Defendant replaced Plaintiff with an employee without a disability and different genetic information than Plaintiff.

37. Defendant replaced Plaintiff with an employee without a work-related injury and disability.

38. All condition precedents have been performed or have occurred.

*COUNT 1*

*DEFENDANT'S ACTIONS VIOLATE*
*THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 PROHIBITING*
*EMPLOYERS FROM DISCRIMINATION*

39. Plaintiff restates the preceding paragraphs as through fully set forth here.

40. At all relevant times, Plaintiff was an employee with a disability under the ADA, and Defendant was an employer, covered by and within the meaning of the ADA.

41. Plaintiff was qualified for her position with or without reasonable accommodations.

42. Defendant subjected Plaintiff to wrongful and discriminatory treatment described above, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; reducing Plaintiff's hours while forcing Plaintiff to undertake work activities that aggravated Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendant forces Plaintiff's employment termination, because of Plaintiff's disability; terminating Plaintiff's employment;

7

and Defendant did not subject Plaintiff's similarly situated coworkers without a disability to such discriminatory treatment.

43.     Defendant replaced Plaintiff with an employee without a disability and the same genetic information as Plaintiff.

44.     As a direct and proximate result of Defendant's intentional acts and omissions, Plaintiff has sustained significant damages, including, but not limited to, loss of earnings, earning capacity, fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

*COUNT 2*

*FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 ET SEQ.*

45.     Plaintiff restates the preceding paragraphs as through fully set forth here.

46.     At all relevant times, Plaintiff was an employee with a disability under the ADA, and Defendant was an employer, covered by and within the meaning of the ADA.

47.     Plaintiff is qualified for her position and able to perform the essential functions of her position with or without reasonable accommodation.

48.     Plaintiff timely notified Defendant of her disability and request for reasonable accommodation.

8

49.    Defendant failed to engage in the interactive process and despite Defendant's ability to accommodate Plaintiff without undue hardship, Defendant refused to afford Plaintiff a reasonable accommodation.

50.    Defendant subjected Plaintiff to wrongful and discriminatory treatment described above, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; reducing Plaintiff's hours while forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendant forces Plaintiff's employment termination, because of Plaintiff's disability; terminating Plaintiff's employment; and Defendant did not subject Plaintiff's similarly situated coworkers without a disability to such discriminatory treatment.

51.    As a direct and proximate result of Defendant's unlawful conduct in refusing to accommodate Plaintiff's request for reasonable accommodations provided for under the ADA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits, and other economic advantages incident of employment; furthermore, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, and outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

*COUNT 3*

*DISCRIMINATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 ET SEQ.*

52.     Plaintiff restates the preceding paragraphs as through fully set forth here.

53.     As a person with disability as defined by the PDCRA, Plaintiff is entitled to protection under the PDCRA; and has a right to be free from discrimination on account of her disability in her employment.

54.     Plaintiff's disability is unrelated to her ability to perform the duties of her previous job, with or without accommodation.

55.     Plaintiff's disability is a factor that made a difference in Defendant's decision to discriminate against Plaintiff, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendant forces Plaintiff's employment termination; terminating Plaintiff's employment; and Defendant did not subject Plaintiff's similarly situated coworkers without a disability to such discriminatory treatment.

56.      Defendant replaced Plaintiff with an employee without a disability and the same genetic information as Plaintiff.

57.     Defendant discriminated against Plaintiff, within the meaning of the PDCRA.

58.     As a direct and proximate result of Defendant's unlawful conduct subjecting Plaintiff to discrimination for exercising Plaintiff's rights provided under the PDCRA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits and other economic advantages incident of employment; and further, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

## COUNT 4

### FAILURE TO ACCOMMODATE IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 ET SEQ.

59.     Plaintiff restates the preceding paragraphs as through fully set forth here.

60.     As a person with a disability as defined by the PDCRA, Plaintiff is entitled to protection under the PDCRA and has a right to be free from discrimination on account of her disability in her employment.

61.     Plaintiff's disability is unrelated to her ability to perform the duties of her previous job, with or without accommodation.

62.    Plaintiff timely notified Defendant of her disability and request for reasonable accommodation, and Defendant refused to afford Plaintiff with such accommodation.

63.    Defendant was able to accommodate Plaintiff without undue hardship.

64.    Defendant subjected Plaintiff to wrongful and discriminatory treatment described above, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; reducing Plaintiff's hours while forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendant forces Plaintiff's employment termination, because of Plaintiff's disability; terminating Plaintiff's employment; and Defendant did not subject Plaintiff's similarly situated coworkers without a disability to such discriminatory treatment.

65.    As a direct and proximate result of Defendant's unlawful conduct in refusing to accommodate Plaintiff's request for reasonable accommodations provided under the PDCRA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits, and other economic advantages incident of employment; furthermore, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, and outrage over

the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

## COUNT 5

### DEFENDANT'S ACTIONS VIOLATE
### THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 PROHIBITING
### RETALIATION IN VIOLATION OF ADA

66.     Plaintiff restates the preceding paragraphs as through fully set forth here.

67.     At all relevant times, Plaintiff was an employee with a disability under ADA, and Defendant was an employer, covered by and within the meaning of the ADA.

68.     Plaintiff engaged in activity protected by the ADA by opposing acts made unlawful by the ADA as described above.

69.     Defendant subjected Plaintiff to wrongful and discriminatory and retaliatory treatment described above, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; and forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendant forces Plaintiff's employment termination, because of Plaintiff's opposition.

70.    There is a causal relationship between Plaintiff's opposition to Defendant's prohibited acts and practices under the ADA and Defendant's discriminatory and retaliatory treatment of Plaintiff.

71.    As a direct and proximate result of Defendant's intentional acts and omissions, Plaintiff has sustained significant damages, including, but not limited to, loss of earnings, earning capacity, fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT 6

### RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 ET SEQ.

72.    Plaintiff restates the preceding paragraphs as through fully set forth here.

73.    As a person with disability as defined by the PDCRA, Plaintiff is entitled to protection under the PDCRA; and has a right to be free from discrimination on account of her disability in her employment.

74.    Plaintiff's disability is unrelated to her ability to perform the duties of her previous job, with or without accommodation.

75. Defendant was able to accommodate the plaintiff without undue hardship.

14

76.    Plaintiff timely submitted a written request for an accommodation, and Defendant refused to afford Plaintiff with such accommodation.

77.    Plaintiff's opposition was a factor that made a difference in Defendant's decision to retaliate against Plaintiff, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; and forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendants forces Plaintiff's employment termination.

78.    Defendant retaliated against Plaintiff, within the meaning of the PDCRA, because Plaintiff opposed Defendant's violations of the PDCRA and Defendant discharged Plaintiff from her employment.

79.    As a direct and proximate result of Defendant's unlawful conduct subjecting Plaintiff to retaliation for exercising Plaintiff's rights provided under the PDCRA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits and other economic advantages incident of employment; and further, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

## COUNT 7

### DEFENDANT'S ACTIONS VIOLATE THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, et. seq. PROHIBITING AGE DISCRIMINATION

80.     Plaintiff restates the preceding paragraphs as through fully set forth here.

81.     At all relevant times, Plaintiff was 58 years old, and Defendant was an employer, covered by and within the meaning of the ADEA.

82.     Plaintiff's age was a factor that made a difference in Defendant's decision to subject her to the wrongful and discriminatory treatment described above, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; and forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendants forces Plaintiff's employment termination.

83.     Defendant, through its agents, representatives, and employees, was predisposed to discriminate against Plaintiff on the basis of age and Defendant acted in accordance with that predisposition.

84.     Defendant's actions were intentional.

85.     Defendant engaged in these intentional discriminatory actions against Plaintiff because of Plaintiff's age.

86.     Defendant did not subject Plaintiff's younger, similarly situated coworkers to these adverse employment actions.

87.     Defendant replaced Plaintiff with a younger employee.

88.     As a direct and proximate result of Defendant's intentional acts and omissions, Plaintiff has sustained significant damages, including, but not limited to, loss of earnings, earning capacity, fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT 8

### DEFENDANT'S ACTIONS VIOLATE THE MICHIGAN ELLIOT LARSEN CIVIL RIGHTS ACT OF 1976, MCL 37.2101 ET SEQ. PROHIBITING AGE DISCRIMINATION

89.     Plaintiff restates the preceding paragraphs as through fully set forth here.

90.     At all relevant times, Plaintiff was 58 years old, and Defendant was an employer, covered by and within the meaning of the ELCRA.

91.     Plaintiff's age was a factor that made a difference in Defendant's decision to subject her to wrongful and discriminatory treatment, including, but not limited to: suspending Plaintiff from employment; refusing to follow Plaintiff's medical restrictions and treatment instructions; and forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make

Plaintiff's employment so intolerable that Defendants forces Plaintiff's employment termination.

92.     Defendant, through its agents, representatives, and employees, was predisposed to discriminate against Plaintiff on the basis of age and Defendant acted in accordance with that predisposition.

93.     Defendant's actions were intentional.

94.     Defendant engaged in these intentional discriminatory actions against Plaintiff because of Plaintiff's age.

95.     Defendant did not subject Plaintiff's younger, similarly situated coworkers to these adverse employment actions.

96.     Defendant replaced Plaintiff with a younger employee.

97.     As a direct and proximate result of Defendant's unlawful conduct subjecting Plaintiff to age discrimination under the ELCRA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits and other economic advantages incident of employment; and further, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

## *COUNT 9*

### *RETALIATION IN VIOLATION OF THE MICHIGAN WORKER'S DISABILITY COMPENSATION ACT, MCL 418.101 ET SEQ.*

98.     Plaintiff restates the preceding paragraphs as through fully set forth here.

99.     Defendant retaliated against Plaintiff for exercising rights provided under the WDCA by refusing to follow Plaintiff's medical restrictions and treatment instructions and forcing Plaintiff to undertake work activities that aggravated Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendants forces Plaintiff's employment termination and terminating Plaintiff's employment after Plaintiff exercised her rights under the WDCA.

100.   As a direct and proximate result of Defendant's unlawful conduct subjecting Plaintiff to retaliation for exercising Plaintiff's rights provided under the WDCA, Plaintiff has sustained lost wages and future earnings, pension and fringe benefits and other economic advantages incident of employment; and further, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

*COUNT 10*

*DISCRIMINATION IN VIOLATION OF THE MICHIGAN WORKER'S
DISABILITY COMPENSATION ACT, MCL 418.101 ET SEQ.*

101. Plaintiff restates the preceding paragraphs as through fully set forth here.

102. Defendant discriminated against Plaintiff for exercising rights provided under the WDCA by treating Plaintiff different with respect to the terms and conditions of employment after she exercised her rights under the WDCA, including, but not limited to: refusing to follow Plaintiff's medical restrictions and treatment instructions and forcing Plaintiff to undertake work activities that aggravate Plaintiff's disabling injuries designed to make Plaintiff's employment so intolerable that Defendants forces Plaintiff's employment termination, because of Plaintiff's after Plaintiff exercised him rights under the WDCA .

103. Defendant discriminated against Plaintiff for exercising rights provided under the WDCA.

104. Defendant replaced Plaintiff with an employee who did not exercise his or her rights under the WDCA or request medical coverage under the WDCA for a work-related injury.

105. As a direct and proximate result of Defendant's unlawful conduct subjecting Plaintiff to discrimination for exercising Plaintiff's rights provided under the WDCA, Plaintiff has sustained lost wages and future earnings, pension

and fringe benefits and other economic advantages incident of employment; and further, Plaintiff has and will continue to suffer mental anguish, anxiety, severe depression, public humiliation, embarrassment, outrage over the manner in which Plaintiff has been treated which includes loss of enjoyment of ordinary pleasures of life.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter a Judgement in her favor against Defendant, providing Plaintiff with the following relief:

A.      Awarding compensatory damages in favor of Plaintiff and against Defendant in an amount exceeding $75,000.00 that she is found to be entitled;

B.      Awarding exemplary damages in favor of Plaintiff and against Defendant an amount exceeding $75,000.00 that she is found to be entitled;

C.      Awarding Plaintiff lost wages and the value of fringe benefits, past and future;

D.      Awarding Plaintiff interest, costs and reasonable attorney fees;

E.      Entering an order enjoining Defendant, its agents, representatives and employees from further acts of discrimination and retaliation; and

F.      Awarding Plaintiff such other relief that this Court deems just and proper at the time of final judgment.

Respectfully Submitted,

COTTON LAW CENTER, PLLC

By:    /S/ Daimeon M. Cotton
        Daimeon M. Cotton (P75563)
        Attorney for Plaintiff
        13900 Woodward Avenue
        Highland Park, Michigan 48203
Date: October 4, 2021    Ph: (313) 963-1320

## JURY TRIAL DEMAND

Plaintiff, Carole Melcher, by and through h e r attorneys, Cotton Law Center, PLLC, hereby requests a trial by jury.

By:    /S/ Daimeon M. Cotton
        Daimeon M. Cotton (P75563)
        Attorney for Plaintiff
        13900 Woodward Avenue
        Highland Park, Michigan 48203
Date: October 4, 2021    Ph: (313) 963-1320